# RIGER ET AL. *v.* L & B LIMITED PARTNERSHIP ET AL.

[No. 99, September Term, 1975.]

*Decided September 16, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ■O'DONNELL, JJ.

*Albert J. Ahern, Jr.*, with whom was *William R. Scannell* on the brief, for appellants.

*Sue Levin, Assistant County Attorney*, with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney*, and *Stephen J. Orens, Assistant County Attorney*, on the brief, for Montgomery County, part of appellees. *Charles Norman Shaffer*, with whom were *Shaffer, McKeever & Fitzpatrick* and *N. Alfred Pasternak* and *Schwartz, Pasternak, Kaufmann, Kaufmann & Glosser, P.C.*, on the brief, for L & B Limited Partnership, other appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This is the second time within a year that the constitutionality of the Montgomery County rent control law, Montgomery County Code (1972, 1974 Cum. Supp.),

Chapter 29, Article VI, has been before us. In *Westchester West No. 2 v. Mont. Co.*, 276 Md. 448, 348 A. 2d 856 (1975), several landlords attacked the Montgomery County rent control law on so-called "substantive due process" grounds, arguing that no public emergency existed with respect to shortages in rental housing, and that, therefore, the rent control law constituted a deprivation of the landlords' private property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. This Court rejected that particular challenge, holding that "the constitutionality of . . . rent control law[s] does not depend upon the existence of an emergency shortage in rental housing" (276 Md. at 463) and that the law was a "reasonable exercise of the state's police power" (*id.* at 464).

The instant case, on the other hand, presents a tenants' challenge to a portion of the rent control law on "procedural due process" grounds. The tenants, plaintiffs below and appellants here, argue that the procedure set forth in the statute under which landlords may seek "extraordinary" rent increases under certain circumstances, involves a taking of the tenants' "property" without due process of law and thus abridges the tenants' Fourteenth Amendment rights.

The Montgomery County rent control law applies to landlords owning three or more dwelling units (§ 29-48 d). Generally, it limits rent increases for holdover tenants under new leases to a maximum of 4% of the base rent (§ 29-51 a).[1] However, the law goes on to provide for what are deemed "extraordinary" rent increases as follows (§ 29-51 b):

"When the basic rent increase would result in a hardship to the landlord, a new lease may be entered into which provides for an increase in rent

___

1. The base rent is the rent charged for the unit for the month of September, 1973, or if the unit was not rented that month, the last monthly rent charged (§ 29-50). The base rent for a new dwelling unit is the monthly rent charged during its initial leasing period (*ibid.*).

in excess of four percent of the base rent if the following procedures have been followed:"

The law then sets forth in detail the procedures for obtaining an extraordinary rent increase. The landlord is required to file for the increase with the County Office of Landlord-Tenant Affairs at least 30 days prior to the effective date thereof. His application must be accompanied by an affidavit setting forth: (a) the "actual operating expenses" of the facility; (b) the "anticipated expenses for the . . . facility"; (c) "[t]he current and proposed rent schedule for each type of dwelling unit in the . . . facility"; (d) "[a] schedule of [the] other fees and income [received from] the . . . facility"; (e) "[t]he vacancy rates for each type of dwelling unit in the . . . facility"; (f) "[t]he schedule of current leases for dwelling units of the type affected by the proposed increase extending beyond the effective date of the increase"; and (g) "[d]etails of any other factors affecting the need for the proposed rent increase."

Contemporaneously with the filing of the request for the extraordinary rent increase, the landlord must also give the tenant notice of his application "accompanied with a copy of the above-described affidavit," and "a statement that the holdover tenant has thirty days to file any appropriate comment regarding the proposed rent increase with the office of landlord-tenant affairs." Such comment may also be filed by "any interested association or organization in the County." Also within thirty days of the filing of the rent increase request, the landlord is required to file with the Office of Landlord-Tenant Affairs a statement that the landlord has met or attempted to meet with the affected tenant or tenants "for the purpose of explaining the basis for the [extraordinary rent] request."

Within 45 days of the landlord's request for the rent increase, the Executive Director of the County Office of Landlord-Tenant Affairs must approve, disapprove, or modify the request by written findings, opinions and orders. This action may be deferred at the discretion of the Executive Director by up to 30 days more. And if he should

decide that a hearing is necessary "in order to properly make a decision," he has a reasonable period of time within which to schedule that hearing. Consequently, the initial administrative decision on the rent increase request may occur substantially after the rent increase takes place. The extraordinary rent increase may go into effect thirty days after the filing of the application, but the Executive Director is given a total of seventy-five days to render a decision, or, if the Executive Director desires a prior hearing, he is given a "reasonable" time. The tenants have no statutory right to a hearing prior to the initial administrative decision.

When the Executive Director makes his decision and issues his findings, a copy of his action must be given to the landlord, to any tenant affected by the rent increase and to any association or organization that filed a comment as to the request. The action of the Executive Director may be appealed by any aggrieved party within 10 days after receipt of notice of the Executive Director's action. If the Executive Director's initial decision was issued without a hearing, upon notice of appeal he must schedule and conduct a hearing "on such action" within a reasonable period of time. Thus the only statutory right to a hearing is after the initial decision and the only time requirement is "reasonableness."

When conducting hearings, the Executive Director has the power to command the attendance of witnesses and the production of relevant documents and records through the issuance of a summons. Any party to a hearing may request the Executive Director to issue a summons, and persons appearing at the hearing are entitled to the assistance of counsel. "The parties may present testimony and evidence which shall be given under oath or by affirmation," and the Office of Landlord-Tenant Affairs must keep a full record of the hearing.

Whenever a hearing has been held, a person disagreeing with the Executive Director's decision has 10 days within which to appeal to the Montgomery County Commission of Landlord-Tenant Affairs by filing a written notice of appeal. The Commission must then schedule a hearing within a reasonable period of time, or may, in its discretion, through

its chairman, summarily affirm the decision of the Executive Director. After action is taken by the Montgomery County Commission of Landlord-Tenant Affairs, administrative procedures for testing a requested rent increase are at an end. An appeal may then be taken to the Circuit Court for Montgomery County.

A somewhat unusual requirement of the rent increase procedure, and the aspect causing the tenants' principal complaint in the present case, is that a tenant must pay the requested extraordinary increase as soon as it is scheduled to go into effect, and the tenant must continue to pay it throughout all administrative and judicial appeals, even when all earlier administrative decisions had been in the tenant's favor. In other words, although the tenant may prevail at the administrative hearing ultimately provided for, he does not at that time receive the fruits of his victory if the landlord decides to pursue the matter. The law thus provides in mandatory terms (§ 29-51 b(13)):

> "Pending the completion of all the rent increase procedures required for an extraordinary rent increase, including all appeal procedures and regardless of whether the executive director has initially approved, disapproved or modified the request for permission to offer the rent increase, any tenant affected by or subject to the increase shall pay it, and if it is finally determined that the increase is not approved in whole or in part, the landlord who has received payment of the increase shall refund the amount of all rent increases not approved."

The law makes no provision for paying the tenant interest on the increased rental payments which are returned if eventually determined to have been unwarranted.

Turning to the specific facts of this case, on December 19, 1974, the appellee L & B Limited Partnership directed a letter to the tenants of the Warwick Towers apartments, owned by L & B, telling the tenants that the landlord was

applying to the Montgomery County Office of Landlord-Tenant Affairs for an extraordinary rent increase. The letters informed the tenants that a rent increase of 11%, applicable to all holdover tenants, was to become effective on February 1, 1975, to all leases commencing thereafter.[2]

On January 31, 1975, the Warwick Towers Tenants' Association filed a "Petition for Injunctive Relief" in the Circuit Court for Montgomery County. Following motions raising preliminary objections, an "Amended Petition for Injunctive Relief" was filed, substituting as plaintiffs three individual holdover tenants living in the Warwick Towers apartments in place of the Tenants' Association. Named as defendants were L & B Limited Partnership which is the owner and landlord of the Warwick Towers apartments, the property manager of the apartments, the Executive Director of the Montgomery County Office of Landlord-Tenant Affairs, the Montgomery County Commission on Landlord-Tenant Affairs, and Montgomery County. The plaintiffs in their amended petition sought an injunction against the enforcement of the extraordinary rent increase provisions of the rent control law on the ground that those provisions deprived the tenants of their property without due process of law. The defendants demurred to the amended petition.

After considering briefs and oral argument, the circuit court (Fairbanks, J.) held that the extraordinary rent increase provisions of the statute were constitutional, as "the careful and detailed procedures set forth in the Rent Control law . . . protect the interests of both tenants and landlords." The court sustained the demurrers of all defendants without leave to amend and dismissed the amended petition for injunctive relief. The tenants appealed to the Court of Special Appeals, and this Court granted a writ of certiorari prior to any decision by the Court of Special Appeals.

---

2. The record indicates that the Warwick Towers apartments consist of 395 units with monthly rentals, prior to the proposed increase, ranging from $195 a month for an efficiency apartment to $475 a month for a penthouse apartment. If the proposed increase were to go into effect, rentals would range from $216 a month to $527 a month.

The tenants complain about the extraordinary rent increase procedures on essentially two grounds: (1) the length of time that may elapse before there is a hearing on the rent increase; and (2) the doubtful value of that hearing once it occurs, in light of the feature of the statute requiring the tenants to continue to pay the rent increase pending final administrative and judicial proceedings, without regard to which side prevailed at the prior proceedings and without payment of interest for the use of the tenants' money. The tenants rely principally upon *Fuentes v. Shevin,* 407 U. S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972), and similar cases. They also rely upon cases involving statutory rent increase provisions applicable to government owned public housing projects, *Thompson v. Washington,* 497 F. 2d 626 (D.C. Cir. 1973); *Escalera v. New York City Housing Authority,* 425 F. 2d 853 (2d Cir.), *cert. denied,* 400 U. S. 853, 91 S. Ct. 54, 27 L.Ed.2d 91 (1970); *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 522 P. 2d 1255 (1974). *See also Burr v. New Rochelle Municipal Housing Authority,* 479 F. 2d 1165 (2d Cir. 1973); *McKinney v. Washington,* 442 F. 2d 726 (D.C. Cir. 1970).

In analyzing any contention that a state is depriving one of his property without due process of law, several issues are logically presented. There must be sufficient governmental involvement in the action complained of to constitute "state" action, *Jackson v. Metropolitan Edison Co.,* 419 U. S. 345, 95 S. Ct. 449, 42 L.Ed.2d 477 (1974); *Barry Properties v. Fick Bros.,* 277 Md. 15, 22, 353 A. 2d 222 (1976). In addition, the governmental action must result in a "deprivation" of the complainant's interest, *Fuentes v. Shevin, supra,* 407 U. S. at 84; *Barry Properties v. Fick Bros., supra,* 277 Md. at 23. Moreover, the private interest involved must rise to a "property" interest within the meaning of the Due Process Clause, *Goss v. Lopez,* 419 U. S. 565, 576, 95 S. Ct. 729, 737, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth,* 408 U. S. 564, 569-571, 92 S. Ct. 2701, 2705-2706, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U. S. 593, 599-602, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972); *Fuentes v. Shevin, supra,* 407 U. S. at 84; *Goldberg v. Kelly,* 397 U. S. 254, 261-262, 90 S. Ct. 1011,

25 L.Ed.2d 287 (1970). Finally, if there is state action depriving one of a property interest, the pertinent inquiry then relates to the procedure which is constitutionally required under the circumstances, as the requirements of procedural due process are flexible, involving a balancing of the various interests at stake, *Hortonville J.S.D. No. 1 v. Hortonville Ed.*, 426 U. S. 482, 494, 96 S. Ct. 2308, 2315, 49 L.Ed.2d 1 (1976); *Mathews v. Eldridge*, 424 U. S. 319, 96 S. Ct. 893, 902-903, 907, 909, 47 L.Ed.2d 18 (1976); *Goss v. Lopez, supra*, 419 U. S. at 577-580, 95 S. Ct. at 738-739; *Mitchell v. W. T. Grant Co.*, 416 U. S. 600, 604, 607, 610, 94 S. Ct. 1895, 1898, 1900-1901, 40 L.Ed.2d 406 (1974); *Board of Regents v. Roth, supra*, 408 U. S. at 570, 92 S. Ct. at 2705; *Bell v. Burson*, 402 U. S. 535, 539-540, 91 S. Ct. 1586, 1589-1590, 29 L.Ed.2d 90 (1971).

While the matter is not entirely free of doubt, in the present case we shall assume arguendo that the provisions of the Montgomery County rent control law, and the actions of the Montgomery County officials pursuant to the law, constitute "state action" depriving the tenants of an interest. *Cf. Geneva Towers Tenants Org. v. Federated Mortgage Inv.*, 504 F. 2d 483, 487-488 (9th Cir. 1974); *Dew v. McLendon Gardens Associates*, 394 F. Supp. 1223, 1230 (N.D. Ga. 1975); *Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F. Supp. 709, 716 (N.D. Ga. 1974); Note, *Procedural Due Process in Government Subsidized Housing*, 86 Harv. L. Rev. 880, 895-896 (1973).[3] However, we do not believe that such

---

**3.** *But cf.* Jackson v. Metropolitan Edison Co., *supra*, 419 U. S. at 357, 95 S. Ct. at 456-457, where, in a different context, the Supreme Court held that governmental approval of a particular practice by a regulated private business did not constitute "state action" for purposes of the Fourteenth Amendment's Due Process Clause, saying:

"The nature of governmental regulation of private utilities is such that a utility may frequently be required by the state regulatory scheme to obtain approval for practices a business regulated in less detail would be free to institute without any approval from a regulatory body. Approval by a state utility commission of such a request from a regulated utility, where the Commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the Commission into 'state action.' At most, the Commission's failure to overturn this practice amounted to no more than a determination that a Pennsylvania utility was authorized to employ such a practice if it so desired. Respondent's

interest of the tenants amounts to a "property" interest protected by the Due Process Clause of the Fourteenth Amendment. Consequently, it is not necessary in this case for us to decide, and we therefore do not decide, whether the extraordinary rent increase procedures of the Montgomery County rent control law would meet due process requirements if the tenants had an actual property interest at stake.

As the Supreme Court has pointed out recently, property interests, although protected by the Constitution, are not created by the Constitution; instead, they have an independent source such as state law or contract. *Bishop v. Wood*, 426 U. S. 341, 344 n. 7, 96 S. Ct. 2074, 2078, 48 L.Ed.2d 684 (1976); *Goss v. Lopez, supra*, 419 U. S. at 572-573, 95 S. Ct. at 735; *Board of Regents v. Roth, supra*, 408 U. S. at 577, 92 S. Ct. at 2709. The nature of an interest which is claimed to be "property" protected by the Fourteenth Amendment is determined by the source of the interest. Thus, the nature of an interest created by state law, or created by a contract subject to state law, is decided by reference to state law. *Bishop v. Wood, supra*, 426 U. S. at 344, 96 S. Ct. at 2077-2078. Once the nature of the claimed property interest is determined, it then becomes a federal constitutional question as to whether the interest is encompassed by the Fourteenth Amendment.

If the extraordinary rent increase provisions of the Montgomery County rent control law applied to the rent which tenants were required to pay during the term of their leases, permitting the landlords to collect greater rent than the parties contracted for, there could be little doubt that such a law would affect "property" interests of the tenants. However, the rent increase provisions do not apply to existing leases; they apply only to new leases to be entered into between landlords and holdover tenants. As we pointed out in *Westchester West No. 2 v. Mont. Co., supra*, 276 Md. at 457-462, the Montgomery County rent control law is not

exercise of the choice allowed by state law where the initiative comes from it and not from the State, does not make its action in doing so 'state action' for purposes of the Fourteenth Amendment."

unlike any other price control legislation. It merely restricts the future freedom to contract of both the landlord and the tenant, regulating the price which the parties may voluntarily agree should be paid for the tenant's use of premises owned by the landlord during the term of a new lease. As the complaining tenants acknowledged in oral argument before us, but for the rent control law the tenants would have no claim of a property right. Unlike the interest involved in several recent procedural due process cases, such as *Fuentes v. Shevin, supra,* the tenants admittedly have no property interest based upon contract or pre-existing property law.[4] Nevertheless, the holdover tenants insist that the Montgomery County rent control law itself confers upon them a benefit which amounts to a property right, and of which they may not be deprived absent procedures complying with due process requirements.

It is true that in recent years the concept of what is "property" within the meaning of the Due Process Clauses of the Fifth and Fourteenth Amendments has been expanded. The distinction between "rights" and "privileges," which was at one time recognized, *Bailey v. Richardson,* 182 F. 2d 46 (D.C. Cir. 1950), *aff'd by an equally divided Court,* 341 U. S. 918, 71 S. Ct. 669, 95 L. Ed. 1352 (1951), and under which only those interests characterized as "rights" were deemed to be encompassed by the Due Process Clauses, has been abandoned. *Board of Regents v. Roth, supra,* 408 U. S. at 571-572, 92 S. Ct. at 2706; *Morrissey v. Brewer,* 408 U. S. 471, 481, 92 S. Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Bell v. Burson, supra,* 402 U. S. at 539, 91 S. Ct. at 1589; *Goldberg v. Kelly, supra,* 397 U. S. at 262, 90 S. Ct. at 1017.

Various types of benefits under federal and state statutes have been held to constitute "property" subject to procedural

---

4. *Fuentes* involved a possessory interest in chattels based upon a conditional sales contract. *See also* North Georgia Finishing, Inc. v. Di-Chem., Inc., 419 U. S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975) (bank account of the person claiming the interest); Mitchell v. W. T. Grant Company, *supra* (possessory interest under installment sales contract); Sniadach v. Family Finance Corp., 395 U. S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969) (earned wages pursuant to employment contract).

due process requirements. For example, in *Goldberg v. Kelly, supra,* the entitlement to welfare benefits pursuant to federal and state programs was held to be "property," with the further holding that such benefits could not be stopped without a pre-termination hearing. In *Bell v. Burson, supra,* the entitlement to a driver's license under state law was deemed "property" for due process purposes. In *Goss v. Lopez, supra,* the Court held that a pupil's interest in attending public school was "property," and that the pupil could not be suspended for even a relatively short period absent some form of notice and hearing. The Court in *Mathews v. Eldridge, supra,* 424 U. S. at 332, 96 S. Ct. at 901, held "that the interest of an individual in continued receipt of [social security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." And in *Arnett v. Kennedy,* 416 U. S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15 (1974), the Court held that a public employee's interest in retaining his job, where the statute required "cause" for removal, was a "property" interest, and that therefore the public employee could be removed only by procedures meeting due process standards.[5]

---

5. In Arnett v. Kennedy, *supra,* the same statutory enactment creating the "property right," *i.e.,* the requirement of "cause" for discharging the employee, also established the procedures for determining cause and removing the employee. The employee involved, while relying on the "grant" in the statute, attacked the procedures set forth. The plurality opinion of three justices, pointing out that "the property interest which appellee had in his employment was itself conditioned by the procedural limitations which had accompanied the grant of that interest" (416 U. S. at 155), took the position that the appellee could not challenge those procedures, stating "that where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet." *Id.* at 153-154. However, the majority of the Court in *Arnett* rejected this reasoning, holding that once the legislature confers a property interest, it cannot at the same time constitutionally condition that grant with procedures falling short of procedural due process safeguards. 416 U. S. at 166-167, 177-178, 185, 211.

Later in Goss v. Lopez, *supra,* 419 U. S. at 573-574, 95 S. Ct. at 735-736, the Court reiterated that the legislature may not constitutionally in the same statute grant a "property right" conditioned by less than due process procedures. *But cf.* the dissenting opinions in Bishop v. Wood, *supra,* 426 U. S. at 353 n. 4, 355-361, 361-362, 96 S. Ct. at 2082, n. 4, 2083-2085, 2085-2086, taking the view that the majority opinion in *Bishop* had adopted the position of the three-justice plurality opinion in *Arnett.*

In light of *Arnett,* we do not in the instant case place any weight on the fact that the procedures under attack by the tenants are in the same statute and intertwined with the claimed property right.

The holdover tenants in the present case obviously have an interest in not having their rent increased by eleven percent, and the Montgomery County rent control law has undoubtedly conferred upon them a benefit of sorts by prohibiting rent increases exceeding four percent absent a showing of hardship. It is this statutory benefit which the tenants, relying upon cases like *Goldberg v. Kelly, supra,* argue amounts to a property right. Nevertheless, we do not believe that every "benefit" conferred by statute creates a property right protected by procedural due process requirements. As the Supreme Court has stated, "the range of interests protected by procedural due process is not infinite." *Paul v. Davis,* 424 U. S. 693, 709, 96 S. Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth, supra,* 408 U. S. at 570, 92 S. Ct. at 2705.

The claimed property interest of the holdover tenants is of a different character than the government benefits involved in the recent cases upon which the tenants rely. Here, the only government "benefit" is the law regulating the use of what is exclusively the landlord's property. No other benefits or entitlements come to the tenants from the government. In *Goldberg v. Kelly, supra,* and *Mathews v. Eldridge, supra,* money in the form of welfare payments and social security disability payments were assertedly due from the government. In *Goss v. Lopez, supra,* the students claiming a property right to attend public schools were, under state law, entitled to receive a service supplied by the government in real estate owned by the government. *Arnett v. Kennedy, supra,* and *Board of Regents v. Roth, supra,* involved the claimed entitlement to be employed by and receive wages from the governments involved. A license coming from the government was the property interest at issue in *Bell v. Burson, supra.* But in the present case, no money, services, chattels, real estate, licenses, etc., are claimed to be due from the Montgomery County government pursuant to the rent control law. There is no "entitlement" from Montgomery County resulting from the rent control law. Unlike welfare benefits, public employment, etc., the government is not the source of the "property" involved. It is

the landlords' property. And the landlords are solely private property owners; the Montgomery County government neither owns nor subsidizes the housing involved.

The lack of government involvement in providing the rental premises is the distinguishing factor between this case and the public housing cases relied on by the appellant tenants, such as *Thompson v. Washington, supra; Burr v. New Rochelle Municipal Housing Authority, supra; Escalera v. New York City Housing Authority, supra;* and *Aguiar v. Hawaii Housing Authority, supra.* All of those cases concerned the due process adequacy of rent increase procedures in government owned public housing projects. The government's supplying a place to live at a certain rent is obviously more akin to the government entitlements such as welfare benefits, etc., involved in the recent Supreme Court cases discussed above.

The cases involving the tenants' procedural rights with respect to government approved rent increases for government subsidized low rental housing, as opposed to government owned housing, may be viewed as presenting a closer situation, and the lower federal courts have had some disagreement in this area. *Compare* the opinions in, *e.g., Harlib v. Lynn,* 511 F. 2d 51, 55 (7th Cir. 1975); *Paulsen v. Coachlight Apartments Co.,* 507 F. 2d 401 (6th Cir. 1974); *Geneva Towers Tenants Org. v. Federated Mortgage Inv., supra,* 504 F. 2d at 488-498; *Langevin v. Chenango Court Inc.,* 447 F. 2d 296 (2d Cir. 1971); *Hahn v. Gottlieb,* 430 F. 2d 1243 (1st Cir. 1970); *People's Rights Organization v. Bethlehem Associates,* 356 F. Supp. 407, 411-413 (E.D. Pa. 1973), *aff'd,* 487 F. 2d 1395 (3d Cir. 1973); *Dew v. McLendon Gardens Associates, supra,* 394 F. Supp. at 1229-1233; *Bloodworth v. Oxford Village Townhouses, Inc., supra,* 377 F. Supp. at 717-719. In two of these cases, the courts have taken the position that the tenants' interest in not having their rent increased does not amount to a "property" right for procedural due process purposes, *Harlib v. Lynn, supra,* 511 F. 2d at 55 ("The statutes creating the . . . [subsidized] housing program do not confer upon tenants such an 'entitlement' to low rental rates that would invoke

procedural due process requirements."); *People's Rights Organization v. Bethlehem Associates, supra,* 356 F. Supp. at 413 (". . . we entertain a substantial doubt that a tenant in a federally assisted housing project has, under the *Roth* analysis, a property interest in a certain rental charge"), although in some of the other cases, the courts have taken a contrary approach, and in still other cases the grounds for the decisions are not clear.

However, assuming for purposes of argument that government approved rent increases for government subsidized housing involve "property" rights of the tenants, such cases are clearly distinguishable from rent increases for holdover tenants under a simple rent control law. A government subsidized low rent housing program, like a public housing program, still involves supplying a certain class of tenants with low rent housing. In a government subsidized low rent housing program, the government is acting in partnership with private landlords to supply benefits, instead of the government's acting alone as in a public housing program. But in both instances, government funds are involved to furnish low rent housing to needy persons. This is not the nature of a rent control program such as in Montgomery County. It is not a public assistance program for needy or disadvantaged persons. A rent control program is designed to regulate the economy, stemming inflation in rental housing where normal market factors are not operating to keep housing costs down.[6]

As previously discussed, the Montgomery County rent control law is simply price control legislation, regulating the price which two private parties agree should be paid for one's use of the other's premises. It is not essentially different from any other price control legislation, regulating the price which may be paid for various goods or services. To accept the holdover tenants' argument, that government

---

6. *But cf.* Jeter v. Kerr, 371 F. Supp. 338, 340 (S.D. N.Y. 1974), where the court, although declining to enjoin a rent increase on "due process" grounds where the tenants complained of the lack of a prior hearing, did appear to assume that there was no difference between a government operated or subsidized housing program and a mere rent control program. For the reasons stated above, we disagree.

regulation of the price which may be paid for use of the landlord's premises confers upon them a "property" right, would mean that every time a government imposed price controls on particular goods or services, the consumers of those goods or services would have a right that the prices would not be raised without procedures complying with due process requirements. No case to our knowledge has extended the concept of "property" so far. On the contrary, in *Sellers v. Iowa Power and Light Company,* 372 F. Supp. 1169, 1172 (S.D. Iowa 1974), a three-judge federal district court held that the customers of a regulated public utility had no "property" interest in the rates which they had to pay for gas and electricity and that, therefore, they had no Fourteenth Amendment right to a hearing before a government-approved rate increase could take effect.

The ramifications of a holding that the tenants in this case have a "property right" because of the benefit to them incidental to the rent control legislation might go far beyond price control legislation. In all government regulation, there are accompanying benefits to the general public or to particular segments of the public. But to consider such benefits government "entitlements" or "property" which could not be terminated without procedural due process safeguards would seriously hamper the ability of government to function.

It is clear that not every interest protected by law, and not every benefit resulting from a particular law or government action, can be deemed a "property" right for procedural due process purposes. In fact, a law may be the basis for a private right of action by the beneficiary against individuals interfering with his interest, without the interest amounting to "property" within the meaning of the Fourteenth Amendment. *Cf. Paul v. Davis, supra,* 424 U. S. at 712, 96 S. Ct. at 1166, holding that one's interest in reputation is neither liberty nor property protected by the Due Process Clause of the Fourteenth Amendment, but

> "[r]ather his interest in reputation is simply one of
> a number which the State may protect against

injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions."

We do not in this case attempt to set forth a definition of "property" interests which will answer all claims that interests in particular government benefits constitute "property" for due process purposes. *Compare Geneva Towers Tenants Org. v. Federated Mortgage Inv., supra,* 504 F. 2d at 493-496 (dissenting opinion of Judge Hufstedler). We go no further than to hold that Montgomery County's regulation of the price which landlords may charge for their premises confers no property right, protected by the Fourteenth Amendment, on holdover tenants.

> *Judgment of the Circuit Court for Montgomery County affirmed. Appellants to pay costs.*