# JOHN W. PITSENBERGER *v.* MARY W. PITSENBERGER

[No. 80, September Term, 1979.]

*Decided January 31, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Ellen Ann Callahan,* with whom were *Gill & Sippel* on the brief, for appellant.

*Vincent E. Ferretti, Jr.,* with whom were *Ferretti, Ehrlich & Gordon* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

This is the first case in which we consider the constitutionality of Maryland's new legislation on property disposition in divorce and annulment — ch. 794 of the Acts of 1978, now codified as Maryland Code (1974, 1979 Cum. Supp.) §§ 3-6A-01 to 3-6A-07 of the Courts and Judicial Proceedings Article. More specifically, two questions are raised for our determination:

> 1. Does § 3-6A-06, on its face, violate procedural due process by authorizing a pendente lite use and possession award of the family home and other property without a preliminary showing by the petitioning spouse that grounds exist for a divorce?

> 2. Does § 3-6A-06 permit the unlawful taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article 24 of the Maryland Declaration of Rights,[1] and Article III, § 40 of the Maryland Constitution?

John and Mary Pitsenberger were married on June 30, 1962, in Alexandria, Virginia. Five children were born as a result of the marriage. In August of 1978, Mary left the family home in Rockville, Maryland, taking two of the parties' five minor children and $10,000 from the parties' joint savings account. About one month later, the other three children went to live with Mary in a small three bedroom townhouse in Derwood, Maryland. Mary rented the house on a month-to-month lease, but she was informed that the lease would not be renewed after May of 1979. While living with Mary, the children remained enrolled in the neighborhood schools near the family home. Mary drove them to school each day.

On January 2, 1979, Mary filed a bill of complaint for a divorce *a mensa et thoro* on the grounds of constructive desertion in the Circuit Court for Montgomery County. She sought pendente lite custody of the children, child support,

---

1. Formerly Article 23 until changed by constitutional amendment, ratified November 7, 1978. *See* chapter 681 of the Acts of 1977.

alimony and, pursuant to § 3-6A-06 (d), an exclusive use and possession order for the family home and family use personal property (furniture, appliances, household furnishings and a 1973 Dodge Dart). On February 9, 1979, John filed his answer and a cross-bill of complaint for divorce *a mensa et thoro* on the grounds of desertion.[2]

On February 16, 1979, a hearing was held before a domestic relations master to determine pendente lite the issues of child custody and support, alimony, and the need of the parties and the children to remain in the family home. Mary testified that she was on welfare and lacked funds to rent another house or apartment. Despite John's yearly salary of approximately $47,000, she said she had received no child support since August, 1978. With respect to alternative living arrangements, Mary explained that her mother's residence, a small three bedroom house in Alexandria, Virginia, provided insufficient living room for her family. The only other alternative was to stay at the three bedroom house of her brother-in-law and his wife and two children. Even if they could reside there on an emergency basis, she would have to drive each day from Bowie, Maryland to the children's schools. Other testimony was heard respecting the fitness of each party to have custody of the children. A Court Investigator's report indicated that all of the children expressed a strong desire to live with their mother. The master refused to hear testimony pertaining to the merits of Mary's suit for divorce.

The master recommended that Mary be awarded pendente lite custody of the minor children and that John pay $1,000 per month child support, as well as pay the mortgage, taxes and insurance for the family home. The master also recommended that Mary be awarded pendente lite use of the family home, the family personal property located in the home and the Dodge Dart, but recommended that Mary be denied temporary alimony and initial counsel fees. These recommendations were adopted by the circuit court on May

2. John filed a petition on April 19, 1979 to dismiss his cross claim for divorce without prejudice.

23, 1979, and its order specified that Mary was awarded the *exclusive* use of the family home.

On May 24, 1979, an order was issued requiring John to show cause why he should not be held in contempt for failing to vacate the family home. In response to Mary's petition to hold him in contempt, John raised the constitutional issues upon which he now appeals. Following a contempt hearing, the circuit court (Mathias, J.) ruled that § 3-6A-06, on its face, does not violate the due process provisions of the federal and state constitutions, and does not sanction the unlawful taking of private property without payment of just compensation. On June 5, 1979, John vacated the family home. We granted certiorari prior to determination by the Court of Special Appeals of John's appeal from the order of the circuit court.[3]

I.

The new statute has governed property disposition in divorce and annulment actions since its effective date of January 1, 1979. In a preamble to the statute, the General Assembly declared that

> " '... it is the policy of this State that marriage is a union between a man and a woman having equal rights under the law. Both spouses owe a duty to contribute his or her best efforts to the marriage, and both, by entering into the marriage, undertake to benefit both spouses and any children they may have.
>
> 'The General Assembly declares further that it is the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family, *and further, that if there are minor children in the family their interest must be given particular and favorable attention.*' " (Emphasis added.)

---

3. The appeal was taken pursuant to § 12-303 (a) of the Courts Article.

The statute changes Maryland law by empowering courts to distribute assets acquired during marriage through monetary awards, § 3-6A-05, and use and possession orders of certain property, § 3-6A-06. The legislation recognizes nonmonetary as well as monetary contributions to a family, § 3-6A-05(b) (1), and authorizes courts to equitably distribute property acquired during marriage, § 3-6A-05 (b) (9). The statute provides various factors to be considered in granting to a spouse with custody of a minor child use and possession awards of the family home and personal property used in the home. *See generally,* Comment, *Property Disposition Upon Divorce in Maryland: An Analysis of the New Statute,* 8 U. Balt. L. Rev. 377 (1979).

This case involves only those sections of the statute that pertain to pendente lite use and possession awards. Section 3-6A-06 is applicable to disposition of the family home and family use personal property. Definitions of the "family home" and "family use personal property" are provided in § 3-6A-01 (b) and (c), respectively. The family home is defined as property in Maryland that:

> "(1) was used as the principal residence of the spouses when they lived together, (2) at the time of the proceeding is owned or leased by at least one of the spouses, and (3) is being used or will be used by at least one of the spouses and a minor child as their principal residence."

Excluded from this definition is property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by a valid agreement. The term "family use personal property" is defined to encompass:

> "tangible personal property, acquired during the marriage, owned by either spouse or owned jointly by both spouses, and used primarily for family purposes. It includes motor vehicles, furniture, furnishings, and household appliances."

This definition also excludes property acquired by inheritance

or gift from a third party or property excluded by valid agreement.

Section 3-6A-06 (a) directs that the family home and family use personal property should be disposed of in such a manner as to

> "permit the children of the family to continue to live in the environment and community which is familiar to them and to permit the continued occupancy of the family home and possession and use of family use personal property by a spouse with custody of a minor child who has a need to live in that home."

Section 3-6A-06 (d) provides for a preliminary determination as to the property which constitutes the family home and the family use personal property, and authorizes a court to exercise pendente lite powers over these types of property. In exercising this authority, a court is directed by § 3-6A-06 (a) to consider the following factors:

> "(1) The best interests of any minor child;
>
> (2) The respective interest of each spouse in continuing to use the family use personal property or occupy or use the family home or any portion of it as a dwelling place;
>
> (3) The respective interest of each spouse in continuing to use the family use personal property or occupy or use the family home or any part of it for the production of income;
>
> (4) Any hardship imposed upon the spouse whose interest in the family home or family use personal property is infringed upon by an order issued under this section."

A temporary or a final order concerning the family home or family use personal property may not exceed a three-year period from the time an absolute or limited divorce or annulment is granted. § 3-6A-06 (e). There is no provision for a preliminary determination of the existence of grounds for a divorce.

## II.

John argues that § 3-6A-06 (d) violates his right to procedural due process guaranteed by the Fourteenth Amendment of the federal constitution and Article 24 of the Maryland Declaration of Rights. He claims that he was deprived of the use of his home without a preliminary determination that Mary has grounds for a divorce.

Preliminarily, it should be pointed out that Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and that Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24. *Barry Properties v. Fick Bros.,* 277 Md. 15, 22, 353 A.2d 222 (1976); *Bureau of Mines v. George's Creek,* 272 Md. 143, 156, 321 A.2d 748 (1974).

Several issues are presented when analyzing a contention that a state has deprived one of his property without due process of law, *see generally, Riger v. L & B Ltd. Partnership,* 278 Md. 281, 288-89, 363 A.2d 481 (1976), but before discussing these issues it should be made clear that John's argument is based on a violation of procedural due process rather than substantive due process. Indeed, John makes no contention that the legislature acted arbitrarily in enacting the family home and family use personal property provisions contained in § 3-6A-06. *See Governor v. Exxon Corp.,* 279 Md. 410, 423-26, 370 A.2d 1102 (1977), *aff'd,* 437 U.S. 117, 98 S. Ct. 2207, 57 L. Ed. 2d 91 (1978).

The first prerequisite to raising a due process argument is that the action complained of must constitute "state" action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974); *Barry Properties v. Fick Bros., supra,* 277 Md. at 22-23. Next, the state action must result in a "deprivation" of the complainant's interest, *Fuentes v. Shevin,* 407 U.S. 67, 84, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *Barry Properties v. Fick Bros., supra,* 277 Md. at 23; and such interest must be a "property" interest within the meaning of the due process clause. *Goss v. Lopez,* 419 U.S. 565, 576, 95 S. Ct. 729, 737, 42 L. Ed. 2d 725 (1975); *Board of Regents v.*

*Roth,* 408 U.S. 564, 569-72, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Fuentes v. Shevin, supra,* 407 U.S. at 84. Finally, if state action deprives one of a property interest, the court must balance the various interests at stake in order to determine the procedural due process which is constitutionally required under the circumstances. *Hortonville Dist. v. Hortonville Ed. Assn.,* 426 U.S. 482, 494-96, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 332-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Goss v. Lopez, supra,* 419 U.S. at 577-80; *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 604, 607, 610, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

It is clear that the remedy of § 3-6A-06 involves state action because it is created, regulated and enforced by the State. *See Barry Properties v. Fick Bros., supra,* 277 Md. at 22-23 (mechanics' liens involve state action). There appears to be no significant difference in the degree or type of state participation in § 3-6A-06 proceedings as compared with the statutes permitting seizure of property pendente lite that the Supreme Court has voided on due process grounds. *See North Georgia Finishing, Inc. v. Di-Chem., Inc.,* 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975) (garnishment); *Mitchell v. W. T. Grant Co., supra* (sequestration under a vendor's lien); *Fuentes v. Shevin, supra* (replevin); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969) (garnishment). Obviously, in voiding these statutes, the Court necessarily concluded that those prejudgment remedies sufficiently involved the state so as to activate due process protections. Section 3-6A-06 effectively creates a right in one tenant to remove a cotenant from property owned by tenants by the entirety, and thereby totally entangles the State in § 3-6A-06 pendente lite proceedings. The enforcement provision of the statute, § 3-6A-07 (a), states: "An order, award, or decree entered under this subtitle may be enforced in accordance with the Maryland Rules." In order to enforce a use and possession order, a court may direct the sheriff to eject an objecting spouse from the family home. Thus, § 3-6A-06 pendente lite determinations, created, regulated and enforced by the State, sufficiently involve state action so as to activate Fourteenth Amendment protection.

The second prerequisite to the applicability of procedural due process protections in this case is "deprivation" of property. *See Fuentes v. Shevin, supra,* 407 U.S. at 84-86. John's property interest in the family home originates from a deed granted to him and his wife as tenants by the entirety. The family use personal property consists of property purchased by John and Mary during their seventeen-year marriage. Although the use and possession order obtained by Mary deprived John of his possession but not his title to the family home and family use personal property, the Supreme Court has held that possessory interests in property are within the protection of the Fourteenth Amendment. *Id.*

The fact that John's dispossession of the family home and family use personal property may be temporary does not render due process requirements inapplicable. John's dispossession may be considered temporary in the sense that he may regain possession of his property if Mary fails to prove grounds for a divorce. Furthermore, if Mary successfully establishes grounds for divorce, John may regain the use of his property if he is awarded custody of the children. § 3-6A-06 (a). In any event, the Supreme Court has pointed out that "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes v. Shevin, supra,* 407 U.S. at 85. *See Sniadach v. Family Finance Corp., supra; Bell v. Burson,* 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). As of December 31, 1979, John has been dispossessed of his property for over six months. With respect to the length of a deprivation, the Supreme Court said in *Fuentes, supra,* 407 U.S. at 86:

> "The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause. While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind."

Thus, John's possessory interest in the family home and family use personal property is entitled to the protection of procedural due process of law.

Once it is determined that an interest is entitled to due process protection, the pertinent inquiry then becomes what process is due. *Goss v. Lopez, supra,* 419 U.S. at 577. The Supreme Court has recognized that interpretation of the due process clause is a practical matter which must be approached with the realization that due process "negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). Determining what process is due requires consideration and accommodation of both the government and private interests. *Hortonville Dist. v. Hortonville Ed. Assn., supra,* 426 U.S. at 494. This essentially involves balancing the various interests at stake. *Riger v. L & B Limited Partnership, supra,* 278 Md. at 289. At a minimum, due process requires that a deprivation of property be preceded by " '. . . notice and opportunity for hearing appropriate to the nature of the case.' " *Goss v. Lopez, supra,* 419 U.S. at 579 (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Fundamentally, due process requires the opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge, supra,* 424 U.S. at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965).

John argues that procedural due process requires a hearing before a spouse can obtain pendente lite the family home and family use personal property. He further asserts that a pendente lite hearing, in order to be meaningful, must inquire into the probability that a spouse seeking a use and possession order will ultimately succeed on the merits of the divorce action. Otherwise, he believes, a party may obtain pendente lite that which he could not obtain if there were no grounds for divorce: the exclusive use of the family home and family use personal property. In sum, John argues that the § 3-6A-06 (d) hearing was meaningless because it avoided what he considers to be the very subject of dispute, namely, whether Mary had grounds for a divorce.

In addressing John's attacks on the constitutionality of § 3-6A-06, we begin by considering the nature of his interests at stake. Next, John's interests in obtaining a hearing on the probable grounds for divorce prior to a pendente lite award must be weighed against the State's interest in implementing the procedure specified in § 3-6A-06. It should also be recognized that the State's interest, under the facts of this case, is essentially the same as the interest of Mary and the parties' children.

John's interest is not to be deprived of the use of his home and family use personal property without a prior hearing which establishes that Mary has probable grounds for divorce. His interest is to avoid the hardship and expense imposed on a parent who is ordered to give exclusive use of the home to his children and the parent who has been awarded custody. John argues that § 3-6A-06 pendente lite determinations may cause gross injustice. He asserts that this section permits a spouse to leave the family home, without grounds for divorce, and to take the minor children and request a pendente lite use and possession decree in order to evict his spouse from the family home. Due to crowded court dockets, he claims that the evicted spouse is prevented from obtaining immediate relief from this hardship.

In opposition to John's interests, the State's interest is to ensure that when a marriage is dissolved, the interests of minor children in the family are given "particular and favorable attention" — this being the policy of the State as declared by the General Assembly in the preamble to the statute. In enacting § 3-6A-06, the State's provision of pendente lite use and possession awards is intended to give special attention to the needs of minor children to continue to live in a familiar environment for the temporary duration of the pendente lite period. The procedure provided for in § 3-6A-06 seeks to avoid uprooting the children from the home, school, social and community setting upon which they are dependent, especially during the period of parental separation. During this period, due to the contentious behavior of the parents, the children have the greatest need for a stable environment to help them overcome the family

instability. Finally, to be considered in conjunction with the State's and children's interests in the pendente lite procedure, Mary also has an interest in continuing to occupy the family home, which she owns with John as a tenant by the entirety.

The legislature was aware in enacting § 3-6A-06 that conflicting interests must be considered and accommodated prior to pendente lite use and possession awards. This accommodation of interests is reflected in § 3-6A-06 (a) which ensures fairness by requiring a court to weigh various needs and interests of the spouses and the children. Prior to a pendente lite determination, which is subject to later modification, a court must consider the best interests of the children, the interests of each spouse in continuing to use the family home for a dwelling place or for production of income, and finally the court must consider any hardship on the spouse whose interest in the family home or family use personal property would be interfered with by a pendente lite award. § 3-6A-06 (a) (1)-(4).

Notwithstanding this procedure, which is carefully designed to accommodate the conflicting interests present pending dissolution of a marriage, John asserts that the pendente lite hearing is meaningless because the existence of probable grounds for a divorce is not a matter that must be considered prior to a pendente lite award. In other words, John argues that § 3-6A-06 pendente lite determinations violate procedural due process because of the legislature's decision to restrict the pendente lite hearing to a consideration of the interests specified in section 3-6A-06 (a) (1)-(4). It has been established, however, that a state may properly limit the issues which may be raised at a hearing prior to a proposed deprivation of interests, if (1) the previously ignored issue may be raised at a subsequent hearing, and (2) the postponement furthers an important state purpose. *See Lindsey v. Normet,* 405 U.S. 56, 64-69, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1972); *Bianchi v. Morales,* 262 U.S. 170, 171, 43 S. Ct. 526, 67 L. Ed. 928 (1923); L. Tribe, *American Constitutional Law* 552-53 (1978).

With respect to the first requirement that must be fulfilled in order to properly limit the issues that may be raised at a

predeprivation hearing, John's concern that no grounds for a divorce exist will be considered at the adversary hearing on the merits of Mary's divorce complaint. Section 3-6A-06 pendente lite determinations also satisfy the second requirement. In enacting § 3-6A-06, the legislature decided not to require a preliminary finding of grounds for divorce as a prerequisite to a pendente lite award. Imposing the additional requirement that probable grounds for divorce be proven would seriously impair the effectiveness of the statute in protecting the children's welfare. In many cases, the existence of grounds for a divorce cannot be proven until a final divorce trial. Section 3-6A-06 is designed to ensure that minor children need not suffer up to the point when grounds for a divorce may be proven. Because the main purpose of § 3-6A-06 is protection of the children's interests, the children must be permitted to reside in the family home regardless of the existence of probable grounds for a divorce.[4] In conclusion, pendente lite use and possession orders awarded after a consideration of the four elements in § 3-6A-06 (a) satisfy procedural due process by effecting a constitutional accommodation of opposing interests.

## III.

John next argues that § 3-6A-06 permits the unlawful taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article 24 of the Maryland Declaration of Rights, and Article III, section 40 of the Maryland Constitution.[5] John contends that the use and possession order signed by the court on May 23, 1979 effectively takes his property by awarding Mary the exclusive use of the family home and family use personal property. John asserts that he is entitled to compensation in

---

4. John also baldly asserts, without supporting argument, that he should not have been evicted from the family home absent a finding that he endangered the health, safety or welfare of his children or spouse. In response to this assertion, it should be recognized that section 3-6A-06 (a) satisfied the requirements of procedural due process through its provision of the four elements that must be considered prior to a pendente lite award.

5. Article III, § 40 and the Fourteenth Amendment have the same meaning in reference to a "taking" of property. Bureau of Mines v. George's Creek, *supra,* 272 Md. at 156.

the amount of the fair market value of his possessory interest in the family home and for relocation expenses.

To constitute a taking in the constitutional sense, so that the State must pay compensation, the state action must deprive the owner of all beneficial use of the property. *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick,* 286 Md. 1, 10-11, 405 A.2d 241 (1979); *Governor of Maryland v. Exxon Corp., supra,* 279 Md. at 437. As these cases indicate, it is not enough for the property owner to show that the state action causes substantial loss or hardship. John, as guardian of his minor children, is charged with their support, care and welfare. Maryland Code (1957, 1978 Repl. Vol.), Art. 72A, § 1. Because his children have the use of the family home and family use personal property, John is in fact using his property to properly house his children. John therefore has not been deprived of all beneficial use of his property. In sum, the use and possession order does not amount to a "taking" of private property in violation of the federal or state constitutions.[6]

We thus conclude that Mary was properly awarded pendente lite use and possession of the family home and family use personal property.

*Order affirmed, with costs.*

---

6. Because we have not found a "taking" in the constitutional sense, it is unnecessary to address John's argument that his property was taken for the private use of another.