STEPHENS, ET AL. *v.* MONTGOMERY COUNTY
COUNCIL AND WILLCHER

[No. 657, September Term, 1966.]

*Decided December 8, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*George W. Shadoan* for appellants.

*C. Edward Nicholson* for M. Willcher, one of appellees; no brief filed for Montgomery County Council, other appellee.

MARBURY, J., delivered the opinion of the Court.

The applicant, Morton Willcher, made application in May 1965, to the County Council for Montgomery County, to have a 2.5214 acre tract located in Garrett Park reclassified from R-90 (one-family, detached, restricted residential) to R-T (town houses). The hearing on the application was held on July 26, 1965, and the application was granted on August 31, 1965. The appellants opposed the application before the council and subsequently appealed the decision of the council to the Circuit Court for Montgomery County, and on October 28, 1966, Judge Anderson filed a memorandum opinion and order affirming the decision of the council and this appeal followed.

The subject property was purchased by Mr. Willcher on February 6, 1964. On an 1891 subdivision plat of Garrett Park this property was designated as a "park". In the "Master Plan for North Bethesda—Garrett Park & Vicinity", adopted April 4, 1962, the property was classified R-60 (one-family, detached residential) and on August 4, 1964, was reclassified as R-90 by a sectional map amendment granted for 132 acres, including the subject property, on the application of the Maryland-National Capital Park and Planning Commission. At the hearing before the council, the town of Garrett Park appeared by its counsel in advocacy of the granting of the application. The application by Mr. Willcher for the map amendment of the property the subject of this appeal was filed only ten months after this reclassification.

The subject property is located north of Clermont Avenue and southwest of the Baltimore and Ohio Railroad tracks in Garrett Park, Maryland. The property is bounded on the northeast, across the B & O Railroad right-of-way, by land which is zoned R-60. Land to the south and west of the subject property is zoned R-90. Except for one C-1 (local commercial) lot, the land on the north is zoned R-90. Willcher's property was

then unimproved. It has a small amount of frontage on Clermont Avenue which constitutes its only means of ingress and egress to a public way. There is a stream which runs through the property in a northerly direction and most of the property slopes toward this stream. In Montgomery County there is a requirement that dwellings be set back a minimum of 160 feet from railroad tracks. Because of this requirement Mr. Willcher was unsuccessful in having a preliminary plat of subdivision for his property approved by the Maryland-National Capital Park and Planning Commission in 1964 under the then existing R-60 classification. The applicant urged before the council, as to the application here involved, that due to the size and shape of the lot, its topography, the requirement of the 160 foot setback, and the limited area of access to a public way, that the land could be utilized as R-90 property only inefficiently and with great difficulty and that it can readily be developed as R-T in a manner consistent with the present character and use of property in the surrounding neighborhood.

The main thrust of the appellants' argument is that the application for reclassification was filed less than eighteen months after the area including the subject property had been rezoned from R-60 to R-90 and that this was not permissible under Montgomery County Code (1965), Section 111-40. The purpose of the eighteen months period of limitations is to prevent an applicant from subjecting the residents of the area to the burden of having to protest and defend against a series of repetitious applications. This purpose would not be furthered by reading the statute so as to apply the eighteen months limitation to prior applications filed by govermental agencies as was the case here. Section 111-40 is by its terms limited to local map amendments which are a type of amendment usually sought by an individual property owner rather than a governmental agency. Further, the section provides that "An application by the district council may be accepted at any time without regard to the time limitation herein." As Judge Anderson noted in his memorandum opinion, the contention of the appellants would only leave the private owner affected by the eighteen months period. The prior amendment here was a sectional map amendment which, according to the terms of Section 111-39, "* * *

may be made only by the commission or the district council." With this type of amendment it is not necessary to post the property involved and every R-60 classification in the area was changed to an R-90 classification. Judge Anderson's reasoning was that Section 111-40 was limited to local map amendments and that the limitation provision was meant to apply only if the prior application was filed for a local map amendment. In light of the reasons set forth above we agree with his conclusions.

If there is any ambiguity in the meaning of the statute it is. the duty of the courts to ascertain and give effect to the statute according to the intention and purpose of the legislative body. C.J.S., *Statutes,* Section 321. Here, the fact that there was ambiguity involved in the statute in question is shown by the fact that the Montgomery County Council, on January 31, 1967, amended Section 111-40 by the addition of subparagraph (e) which reads as follows: "The time limitations set forth in subparagraphs (a) and (b) of this section shall not apply when the previous application (or applications), which would bar the filing of a new application, was filed by a governmental agency not at the owner's request." This amendment is directly in line with Judge Anderson's construction of the statute as it then existed and it may readily be inferred that the action of the council, in enacting the amendment, was an application of legislative approval of the judicial construction that had been placed on the statute and that this construction was correct.

We also find that the action of the Montgomery County Council in approving Willcher's application was not arbitrary and capricious and that the circuit court was correct in affirming the action of the council since the record before the council was at least debatable and the court should not substitute its own judgment for that of the zoning authority in the face of such a record. The council had before it a report of the technical staff of the Maryland-National Capital Park and Planning Commission favoring the rezoning of the subject property. The technical staff recommended the R-T zoning as permitting development of this and similar odd shaped tracts, as having greater advantage from both economic and esthetic points of view, as allowing construction of attractive and desirable residences on land topographically unsuitable for single family de-

velopment, and as being in harmony with the surrounding development. The fact that the effect of any increased traffic that may result from the construction of town houses on the Willcher tract was not specifically mentioned by the staff report does not establish that it was not one of the multitude of factors considered by the technical staff.

Based upon consideration of the evidence before the council, as shown by the record, we hold that the lower court was correct in finding that there was substantial evidence to justify the decision of the council and that its decision was fairly debatable. We also think Judge Anderson properly construed the law in affirming the council's rezoning of the subject property.

*Order affirmed, with costs.*