GARRETT PARK, MARYLAND *v.* MONT-GOMERY COUNTY COUNCIL, ET AL.

[No. 248, September Term, 1969.]

*Decided March 6, 1970.*

*Motion for rehearing filed April 3, 1970; denied April 7, 1970.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*John J. Delaney*, with whom were *Linowes & Blocher*, *R. Robert Linowes* and *Joseph P. Blocher* on the brief, for appellant.

*C. Edward Nicholson* for Morton and Arthur Willcher, part of appellees; by *Arthur S. Drea, Jr., Assistant County Attorney,* with whom were *David L. Cahoon, County Attorney,* and *Alfred H. Carter, Deputy County Attorney,* on the brief, for Montgomery County Council, et al., other appellees.

McWILLIAMS, J., delivered the opinion of the Court.

The appellant, Garrett Park [1] (the town), is one of the older (1898) municipalities of Montgomery County. Montgomery County Code § 54-1 (1965). Morton and Veronica Willcher (Willcher) are the owners of a 2.5214 acre tract (the property) the zoning classification of which is the subject of this dispute. They became parties by intervention but for our purposes we shall treat the Montgomery County Council (the council) as the appellee. Since the matter before us is a reprise of *Stephens v. Montgomery County,* 248 Md. 256 (1967), our chief concern will be the applicability of the doctrine of res judicata.

Willcher bought the property, described in detail in *Stephens,* in February 1964. In August of that year all of Garrett Park was reclassified from R-60 (Residential, 6000 square feet minimum) to R-90 (Residential, 9000 square feet minimum). In November Willcher sought a change in classification from R-90 to R-T (Town Houses). The town and its residents "vigorously opposed" his petition. The council granted the reclassification, saying:

> "* * * From the evidence presented by both sides the Council finds that this property could not reasonably be developed in the R-90 Zone.
>
> "The ordinance that enacted the Town House Zone stated that it would 'enable construction of attractive and desirable residences in areas or on land not ideally suited topographically or

1. The name perpetuates the memory of the late John W. Garrett, a former president of the Baltimore and Ohio Railroad, a branch of which runs through Garrett Park. The railroad's right-of-way is the northeastern boundary of Willcher's property.

> otherwise for single-family development.' The Council finds that this small tract of land is not suitable for development with single-family residences because of its proximity to commercial uses, the railroad and especially its odd shape. The construction of a small number of town houses at this location can have no detrimental effect upon nearby detached single-family residences."

The council's decision was upheld by the circuit court, Anderson, J. We affirmed the decision of Judge Anderson in *Stephens*. Judge Marbury, for this Court, said:

> "Based upon consideration of the evidence before the council, as shown by the record, we hold that the lower court was correct in finding that there was substantial evidence to justify the decision of the council and that its decision was fairly debatable. We also think Judge Anderson properly construed the law in affirming the council's rezoning of the subject property." *Id.* at 260.

Less than three weeks after our decision in *Stephens* the town filed a petition to reclassify the property from R-T back to R-90 alleging that the earlier decision was based on an "erroneous" premise, i.e., that the property could not reasonably have been used in the R-90 classification because only four lots could have been developed upon it, whereas, in fact, six lots could be developed and, had the council been aware of this "fact" it would have rejected the R-T classification. The hearing examiner, Rita C. Davidson, in an able and comprehensive opinion, concluded that "[b]ecause essentially the same facts appeared in the second case as appeared or as could have been shown in the first case the * * * [town] is barred by res judicata." The council adopted her recommendation that the application be denied, "find[ing] and conclud[ing] that the same facts appeared in the second case as appeared or as could have been shown in the first case

[and that] [c]onsequently, there has not been a change in fact or circumstance between the first case and the instant case sufficient to justify reclassification." The town's appeal to the circuit court stressed the inapplicability of res judicata. On 14 February 1969 the council moved for a summary judgment alleging "no genuine dispute as to facts" and its right to judgment as a matter of law "on the principle of res judicata." The trial judge, Moorman, J., agreed; this appeal is from the summary judgment entered by him on 28 July.

I.

The town suggests impropriety in the use of summary judgment claiming it is not available under Maryland Rule B ("Administrative Agencies—Appeal From"), and insisting there is a genuine dispute as to material facts.

Since the first point was not raised in the court below it need not be considered here. Rule 885. However, an interesting notion is presented so we shall indulge in a brief comment. It does not seem to us that summary judgment was, in these circumstances, an impermissible procedure. Rule B9 provides as follows:

> "A party to the proceeding before the agency, or to whom the agency is required by law to give notice of the action appealed from, who desires to participate in the appeal as a party * * * shall file with the clerk of the court, within thirty days after the filing of the petition of appeal * * * a *demurrer,* or an answer admitting or denying a fact alleged in such petition and asserting briefly such defense as he or it may see fit, *or other appropriate pleading.* * * *." (Emphasis added.)

In *Sterling v. Local 438, Pipe Fitters,* 207 Md. 132, 139-40 (1955), Judge (now Chief Judge) Hammond, for the Court, observed:

> "Even before the rules permitted summary judgments, the defense of res judicata could be made

> by *demurrer* where the facts and the nature of the prior adjudication appeared on the face of the pleadings. * * * *It is clear that under the present rules of practice and procedure, motions for summary judgments may be granted on the ground of res judicata under similar circumstances.*" (Emphasis added.)

Since Rule B9 expressly provides for an "other appropriate pleading" we think, in view of *Sterling,* that a motion for summary judgment is such an "appropriate pleading." Maryland Rule 5 v; *contra, Fletcher v. Flourney,* 198 Md. 53 (1951), (decided before 1 January 1957, the effective date of Rule 5 v). *See also* 101 C.J.S., *Zoning* § 367 at 1221 (1958).

In its brief the town contends that the "factual" disputes which preclude the entry of summary judgment are as follows: (1) "Whether the existing R-T zoning on the subject property is proper;" (2) "Whether the original R-90 zoning on the subject property was confiscatory;" (3) "If the original action of the District Council granting R-T zoning in 1965 was a mistake * * * whether the District Council * * * erred * * * in refusing even to investigate whether it should correct its earlier mistake * * *;" (4) "Whether application F-150 [the instant case] was a local map amendment;" and (5) "Whether the Council was required to find any change in fact or circumstance in order to grant the [requested] R-90 zoning * * *." In the trial court the town asserted "seven facts" which it alleged were in dispute. However, "after carefully reviewing each statement" Judge Moorman concluded that the disputes were not as to facts but were "questions for the court's determination should the appeal reach trial." We agree. As Judge Hammond noted in *Sterling, supra* at 140, quoting from *Mellen v. Hirsch,* 8 F.R.D. 250, 252 (D. Md. 1948), *aff'd,* 171 F. 2d 127 (4th Cir. 1948), " 'the only issue now open for further litigation between the parties in this case is merely a question of law and not one of fact.' "

II.

In support of its main contention the town argues that (1) "[r]es judicata is not applicable where [the] initial decision is based upon erroneous testimony;" (2) "[the] facts and circumstances between [the] first and second decision are dissimilar;" and (3) "[a] legislative body has the right and obligation to correct its own mistakes." No useful purpose will be served by rehashing the cases dealing with the doctrine of res judicata, especially in view of our frequent application of it in the past. Its applicability to a judgment affirming or reversing an administrative or quasi-judicial decision appears to be well settled. *See, e.g., Fertitta v. Brown,* 252 Md. 594, 599 (1969), and the cases cited therein. The town leans heavily on *Scull v. Coleman,* 251 Md. 6 (1968), a case in which the doctrine was neither applied nor mentioned, but which is said by the town to be "the only * * * [case] factually similar to the case at bar." An examination of *Scull,* however, reveals it to be neither factually similar to nor closely resembling the instant case. There the newly elected (Montgomery) council, in 1966, voted to reconsider an earlier decision to rezone a tract of land from R-60 to C-1. The circuit court, Clapp, J., declared the reconsideration to have been improper. Subsequently the council *comprehensively* rezoned the tract to R-60, an action which the circuit court struck down but which we upheld. Res judicata did not bar the subsequent rezoning, nor was it so argued, for the obvious reason that the issues in the two proceedings (i.e., piecemeal v. comprehensive rezoning) were not substantially the same. Although the town argues, obviously with tongue in cheek, that the requested rezoning in the instant case is likewise "comprehensive in nature," we do not agree and we think it is significant that its application is entitled "Application for *Local Map Amendment* to the Zoning Ordinance." [2] (Emphasis added.) Nor do we find persuasive

2. For a description of what is to be considered as comprehensive rezoning *see Trustees of McDonogh Educ. Fund & Inst. v. Baltimore County,* 221 Md. 550, 561 (1960).

the argument that there are additional "facts and circumstances" which distinguish the instant case from *Stephens*.

It seems appropriate at this point to repeat the recent statement of Judge Barnes in *A. B. Veirs, Inc. v. Whalen*, 256 Md. 162 (1969). He said, for the Court:

> "It is * * * well established that the doctrine of *res judicata* applies not only to the issues expressly decided in the prior case between the same parties, but to every matter which *might* have been presented in that prior case. As Judge (later Chief Judge) Prescott stated for the Court in *Nutter v. Baltimore*, 232 Md. 210, 213, 192 A. 2d 477, 479 (1963):
>
> > " '*Res judicata* * * * applies not only to every issue between the same parties expressly decided in a prior case, but also to every matter which properly might have been presented.' " *Id.* at 167.

As earlier noted, the town has made much of the fact that the experts in the second hearing suggested a higher lot yield than the experts in the first case, and that the lower figure was relied upon by the council when, in 1965, it concluded that the property "could not reasonably be developed in the R-90 Zone." One should be mindful, however, that expert testimony was offered by *both* sides at the 1965 hearing and, as we see it, the now vaunted higher lot yield was matter which clearly "*might* [then] have been presented." *A. B. Viers, Inc., supra.* As Judge Barnes also stated, "[i]t is apparent that the * * * doctrine of *res judicata* is not rendered inapplicable because * * * [the appellant] can supposedly prove a better case in the second case than he did in the first case." *Id.* at 169.

The town's point that *Stephens* involved a request to zone downward whereas the case at bar involves zoning upward lacks merit. *See Carey v. Martin*, 251 Md. 446 (1968). And the argument that a legislative body has the

right to correct its own mistakes might, in another context, be persuasive; here it must yield to the dispositive effect of the doctrine of res judicata.

### III and IV.

We cannot say that the council's denial of the town's application was "arbitrary and capricious." The argument that "the designation of the * * * property as 'Park' in a plat of the subdivision recorded in 1891 amounted to a dedication of the * * * [property] for this purpose" is made here for the first time. Indeed, it suggests an entirely different ball game and, of course, is beyond the scope of our immediate consideration.

*Order affirmed.*
*Costs to be paid by appellant.*