LAWRENCE N. BRANDT, INC. ET AL. *v.* MONT-
GOMERY COUNTY COMMISSION ON
LANDLORD-TENANT AFFAIRS
ET AL.

[No. 830, September Term, 1977.]

*Decided March 13, 1978.*

The cause was argued before GILBERT, C. J., and THOMPSON and MOORE, JJ.

*William J. Chen* for appellants.

*Daniel J. Cassidy, Assistant County Attorney for Montgomery County,* with whom were *Richard S. McKernon, County Attorney,* and *Richard E. Frederick, Deputy County Attorney,* on the brief, for appellees Montgomery County, Maryland and Montgomery County Commission on Landlord-Tenant Affairs. *A. Howard Metro* for other appellees.

MOORE, J., delivered the opinion of the Court.

This appeal is another episode in the life — now legislatively extinguished — of the Montgomery County rent control law.[1] Here, a landlord was rejected in its bid for an "Extraordinary Rent Increase." A subsequent statutory appeal to the circuit court was unavailing, as were a request for a hearing *en banc* and a motion to revise judgment. The landlord then sought a rehearing before the administrative agency which the latter denied. Unbowed, the landlord then pursued an action in the circuit court for a declaratory judgment, and was again rebuffed. From the lower court's adverse declaration, this appeal has been taken; but a like fate awaits this persistent litigant's latest encounter.

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, May 19, 1978.

1. This legislation, entitled "Fair Landlord-Tenant Relations," was enacted on June 13, 1972 as Bill 19-71, Chapter 93A of the Montgomery County Code, and provided comprehensive regulation of apartment rentals and landlord-tenant relationships in Montgomery County. Its structure was described and approved by the Court of Appeals in County Council v. Investors Funding, 270 Md. 403, 312 A. 2d 225 (1973). The law was repealed in its entirety and re-enacted by the County Council with amendments in Bill 35-77 as the "Omnibus Tenant Protection Act" on December 16, 1977, effective January 1, 1978. In place of the repealed rent control law, the new legislation established a system of "voluntary rent guidelines."

## I

On July 29, 1974, appellant, Lawrence N. Brandt, Inc., filed an application for an extraordinary rent increase (ERI) with the office of Landlord-Tenant Affairs for Montgomery County (OLTA) in conformance with § 29-51 (b) of the Montgomery County Code (1972, 1974 Cum. Supp.). The ERI was sought under the county's rent control law as a result of alleged increased operating expenses at Colesville Towers, an apartment-hotel complex in Silver Spring; the expenses were claimed to be of such magnitude as to create a "hardship" if the landlord was limited to a "basic rent increase" (BRI), up to a maximum of four per cent of the base rent for each apartment, permitted to be charged to holdover tenants under new leases.[2]

The executive director of OLTA was empowered to rule, in the first instance, upon ERI applications and, after a hearing in which appellant and certain tenants participated, he issued a decision on January 6, 1975 granting appellant's request.

Appeals were taken by both tenants and landlord[3] to the Commission on Landlord-Tenant Affairs, pursuant to § 29-51 (b) (10), and a hearing was held on March 17, 1975. The executive director's determination of the landlord's

---

2. The rent increase provisions of the law were carefully explained by Judge Eldridge in Riger v. L & B Limited Partnership, 278 Md. 281, 363 A. 2d 481 (1976) where a challenge by tenants on constitutional ("procedural due process") grounds proved unsuccessful. It was there pointed out that the law applied to landlords owning three or more dwelling units and generally limited rent increases for holdover tenants under new leases to a maximum of 4% of the "base rent" as defined in the statute. However, the law also provided for "extraordinary" rent increases when the basic rent increase would result in a hardship to the landlord. The court characterized as "somewhat unusual" a requirement of the rent increase procedure that a tenant must pay the requested extraordinary rent increase as soon as it was scheduled to go into effect and throughout all administrative and judicial appeals, even when earlier administrative decisions were in the tenant's favor. 278 Md. at 286, 363 A. 2d at 484. In addition, the law made no provision for the payment of interest to the tenant if the increase was eventually determined to be unwarranted. *Id.*

Here, the ERI requested was in a range from 2.9% to 14.9% or $10.00 to $29.00 per unit. Appellant has collected this increase during the pendency of these proceedings, since October 1, 1974. In some cases tenants refused to pay and appellant requested below injunctive relief to permit it to continue "to charge, receive and collect" rents with the ERI included.

3. The landlord challenged only the effective date of the increase, *i.e.,* October 1, 1974, rather than September 1, 1974.

150

entitlement to the ERI was reversed by the Commission. In a written "Decision and Order," dated May 20, 1975, the Commission's Chairman, John L. Catalan, stated, in pertinent part:

> "In deciding this appeal the Commission finds that it must agree with the tenants' contention that the record established during these proceedings fails to disclose any creditable evidence to support the landlord's allegation of hardship.

> "Section 29-51b permits the granting of an Extraordinary Rent Increase only upon a showing that the basic rent increase would result in a 'hardship.' Section 29-51b (5) requires the Executive Director to make a specific finding as to hardship. The landlord has the burden of proving the existence of hardship by a preponderance of the evidence.

> "The record doesn't contain any evidence to support the conclusion that the landlord has even sustained any loss in his business during the period under review, much less hardship." [4]

The Commission's order constituted final administrative action under § 29-51 (b) (12), and the sole remaining remedy for an "aggrieved party" under the provisions of the Code then existing was an appeal to the Circuit Court for Montgomery County, under Subtitle B of the Maryland Rules of Procedure, entitled "Administrative Agencies — Appeal From." [5]

Appellant did not petition the Commission for a rehearing [6] but filed in the circuit court, on June 10, 1975, a Petition in Support of Appeal. Appellant's allegations were two-fold: paragraph seven, which contained eight sub-parts, challenged the constitutionality of the rent control article of the

4. No "basic rent increase" was approved by the Commission, apparently because only an "extraordinary rent increase" had been requested.

5. By subsequent amendment, appeals were permitted beyond the circuit court to the appellate courts. Montgomery County Code, § 29-57 (h) (1976 Cum. Supp.)

6. The rent control law contained no specific provision for rehearing or reconsideration by the Commission.

Montgomery County Code as violating due process and equal protection, impairing freedom of contract, and improperly extending the police power; the succeeding paragraph, in six sub-parts, claimed arbitrary and capricious action on the part of the Commission in substituting its judgment for that of the executive director. The relief requested was that the court declare the act unconstitutional and that it reinstate the ERI granted by the director, effective September 1, 1974, rather than October 1, 1974. (No claim of error was made in the failure of the Commission to grant a basic rent increase, as distinguished from an extraordinary rent increase.)

A hearing was held in the circuit court before Judge Richard B. Latham and, on July 15, 1976, the court rendered an oral opinion. After reviewing the history of the case and the evidence presented, Judge Latham stated:

> "Considering the various data as presented by the tenants at the hearing before the full Commission plus the record of the hearing before the Executive Director, the Court can only conclude that *there was in fact a factual basis for the Commission finding that the record established during their hearing, and also referring to the proceedings before the Executive Director, that the landlord had in fact failed to disclose any credible evidence to support the allegation of hardship.*" (Emphasis added.)

The court further held that "the findings of the full Commission [were] fairly debatable," and refused to "substitute its own judgment for that of the Commission. . . ." The challenges to the constitutionality of the act were not addressed in the court's opinion.[7]

A motion to revise the judgment, pursuant to Maryland Rule 625, was then filed by appellant in the circuit court. At

---

7. The power of the County Council to enact this legislation was affirmed in *County Council v. Investors Funding Corp., supra,* note 1, where the constitutionality of a number of its provisions was also upheld. A landlord challenge to the local law on so-called "substantive due process" grounds was rejected in *Westchester West No. 2 Limited Partnership v. Montgomery County,* 276 Md. 448, 348 A. 2d 856 (1975). That decision appears to have put to rest the constitutional questions presented to Judge Latham.

a hearing before Judge Latham, appellant's counsel argued (a) that some members of the Commission had arrived at their decision without reviewing the entire record of the proceedings before the executive director, (b) that certain new evidence of increased expenses forwarded by appellant to the Commission after the hearing had not been considered, and (c) that the Commission had applied an incorrect evaluative standard in determining whether appellant had suffered financial hardship. On February 22, 1977, Judge Latham denied appellant's motion for revision, after hearing extensive oral argument from counsel for the parties.

Thereupon, on March 7, 1977, almost two years after the final order of the Commission from which the appeal had been taken, appellant engaged new counsel and filed a Petition for Rehearing before the Commission alleging "fraud, mistake, or inadvertence" in the Commission's original decision of May 20, 1975. Four grounds were asserted, the first three of which had been presented to the circuit court in the appeal proceedings: that the Commission applied an incorrect evaluative standard in denying the ERI; that the appellant was prejudiced by virtue of its being denied the opportunity to present evidence at the Commission hearing, and that the panel of Commissioners failed to discharge its duty to review the entire proceedings, where one or more members failed to read the record in its entirety. The fourth ground was that the Commission failed to consider appellant's entitlement to a "Basic Rent Increase" (BRI), when it ruled unfavorably with respect to the ERI. On March 22, 1977, the Commission, agreeing "that it may have the authority under certain circumstances to rehear such a case," declined to do so by a 4 to 3 vote.

At that juncture, appellant instituted a declaratory judgment action in the Circuit Court for Montgomery County which has given rise to this appeal. The bill of complaint also included a prayer for injunctive relief. Appellee demurred to appellant's complaint, alleging that the action was barred by collateral estoppel or *res judicata* as a consequence of the prior appeal to the circuit court. At a hearing before Judge David L. Cahoon, on May 19, 1977, oral motions for summary

judgment were made by appellees.[8] Judge Cahoon, holding that the court could properly enter summary declaratory judgment, delivered an oral opinion from the bench in which he carefully considered the grounds upon which appellant contended that error had been committed by the Commission. In sustaining appellees' demurrers without leave to amend and issuing a declaratory judgment, he stated in part:

> "In summary, I find in the first instance that taken in their best light, the grounds for rehearing presented to the Commission were insufficient in not meeting the test of a decision that had been caused by fraud, mistake or irregularity. More significantly, each and every one of the matters, insofar as the proceedings before this Court are concerned would be barred by res judicata, or collateral estoppel. . . .

> "For those reasons, the Court will sustain the demurrers that have been filed and will sustain them without leave to amend and issue a declaratory judgment that the Commission's action of March 22, 1977 was not an abuse of administrative discretion in that the Commission's hearing and action on the ERI request of Lawrence N. Brandt, Inc. was not shown to have been attended by mistake, fraud, or inadvertence. . . ."

The court also denied the injunctive relief prayed by appellant to enjoin OLTA, the Commission, other county officials and certain tenant intervenors from interfering with appellant's right to collect the ERI rent, pending appeal procedures, under the provision of § 29-51 (b) (13) of the rent control law. *See Riger v. L & B Limited Partnership, supra,* note 2. Appellant thereafter filed a petition for reconsideration of Judge Cahoon's final order. That petition was also denied.

---

8. Judge Cahoon *sua sponte* raised the issue of the propriety *vel non* of the use of a demurrer in an action for declaratory relief and invited appellees' motions for summary judgment. *See* Hunt v. Montgomery County, 248 Md. 403, 237 A. 2d 35 (1968); *see also* Fertitta v. Brown, 252 Md. 594, 251 A. 2d 212 (1969); Urbana Civic Assoc. v. Frederick County Board of County Commissioners, 23 Md. App. 49, 325 A. 2d 755 (1974).

On this appeal, it is contended that the lower court erred in disposing of the suit under a summary judgment procedure;[9] that the declaratory judgment issued by the court was incorrectly based upon *res judicata* or collateral estoppel; and that injunctive relief was improperly withheld. For reasons hereafter set forth, we do not reach the first and third issues, and we approach the *res judicata* question in a different context.

We find in appellant's brief a succinct statement of the purposes for which the declaratory judgment action was brought:

> "The declaratory judgment action sought judicial review of *two* administrative actions of the local regulatory agency. The *first* administrative action of which complaint was made was a decision of the local agency which dealt with a request by the Appellant to raise rents at a rental facility in Montgomery County. The *second* administrative action of which complaint was made was a decision of the local agency which dealt with a petition filed with it by the Appellant to rehear the request to raise rents at the rental facility. The agency had denied the request to raise rents, and denied a petition to rehear the request."

In our judgment, appellant was not entitled to further judicial review of agency action in either of the above instances. We therefore hold that the instant appeal must be dismissed and the case remanded to the circuit court with instructions that the action also be dismissed at that level.

## II

Our review of the authorities yields two grounds which require disposition of the case in this manner. First, dismissal is mandated by the clear language of the Uniform

---

9. The final order entered by Judge Cahoon noted the "absence of a genuine dispute as to any material fact" but (1) ordered that the demurrers be sustained without leave to amend and (2) declared that the Commission's action on March 22, 1977 rejecting appellant's petition for a rehearing "was not an abuse of administrative discretion."

Declaratory Judgments Act, Md. Cts. & Jud. Proc. Code Ann. §§ 3-401 *et seq.* (1974), which provides, in § 3-409 (b) that "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." Second, we are persuaded that the doctrine of *res judicata* bars the declaratory judgment action with respect to the agency's denial of appellant's request to raise rents, and that the agency's refusal to reconsider such determination was justified not only by *res judicata* considerations but also because appellant's claim to agency reconsideration came too late. We will separately discuss the application of the declaratory judgment statute and of the doctrine of *res judicata* to each administrative action of which "judicial review" was sought.

## A. DENIAL OF REQUEST TO RAISE RENTS

### 1. Declaratory Judgments Act

We regard the right of appeal to the circuit court permitted an aggrieved party under § 29-51 (b) (12) of the Montgomery County Code as the precise "special form of remedy for a specific type of case" contemplated as being exclusive by the drafters of the Uniform Declaratory Judgments Act. Once the statutory mode of appeal has been exhausted, no further right remains in a party to secure review of a final decision of an agency. *See Prince George's County v. Fahey,* 28 Md. App. 312, 345 A. 2d 102 (1975). There is nothing to distinguish the instant case from the legion of cases decided by the Court of Appeals where a declaratory remedy was held not to exist in the face of a statutorily-provided right of appeal. *Hartman v. Prince George's County,* 264 Md. 320, 286 A. 2d 88 (1972) [*citing Reiling v. Comptroller,* 201 Md. 384, 94 A. 2d 261 (1953); *Tanner v. McKeldin,* 202 Md. 569, 97 A. 2d 449 (1953); *Albert v. Public Service Commission,* 209 Md. 27, 120 A. 2d 346 (1956); *Quinan v. Schneider,* 247 Md. 310, 231 A. 2d 37 (1967); *Lee v. Secretary of State,* 251 Md. 134, 246 A. 2d 562 (1968)]; *Friendship Heights v. Funger,* 265 Md. 339, 289 A. 2d 329 (1972); *Soley v. State Commission on Human Relations,* 277 Md. 521, 356 A. 2d 254 (1976); *C. & P. Telephone Co. v. Pincoffs,* 23 Md. App. 474, 328 A. 2d 78 (1974).

In a leading case involving the right to declaratory relief in such a situation, *Mayor of Baltimore v. Seabolt,* 210 Md. 199, 123 A. 2d 207 (1956), the city of Baltimore and intervening property owners appealed from a declaratory decree of the lower court that a zoning ordinance was invalid with respect to certain property. The Court of Appeals held that an existing statutory method of appeal from zoning board determinations created an exclusive remedy, and should have been followed by the appellants:

> "If resort to declaratory judgment procedures can be had in every case where an applicant is dissatisfied with the ruling of the Board and the application of the general Zoning Ordinance to specific properties all over the City can be challenged, a condition of chaos can easily result. . . .
>
> ". . . The use of the Declaratory Judgments Act to accomplish such a result as that just stated would, we think, frustrate the purposes of the zoning laws and would go beyond the proper limits of declaratory relief." 210 Md. at 209-10, 123 A. 2d at 212. *See also Commissioners of Cambridge v. Eastern Shore Public Service Co.,* 192 Md. 333, 64 A. 2d 151 (1949).

Even where questions of constitutional law are involved, if they can be raised in the statutorily-provided appellate setting, no exception to the strict rule of the Declaratory Judgments Act will apply. As the Court of Appeals stated in *Poe v. Mayor of Baltimore,* 241 Md. 303, 307, 216 A. 2d 707, 709 (1966), another zoning case:

> "The appellants contend that they had no effective remedy before the Board, because the Board is an administrative agency, not a court, and only a court can decide a question of constitutional law. This argument overlooks the fact that Section 40 of the Zoning Ordinance provides for an appeal from the Board's action in denying an application for a special exception to the Baltimore City Court, and, from the decision of that court, to this tribunal." *Cf. Commissioners of Cambridge v. Eastern Shore*

*Public Service Co., supra,* 192 Md. at 337, 64 A. 2d at 152-53.

In the instant case, appellant contends that errors of law were committed by the agency in denying the request for an ERI. We believe that such issues could have been, and, indeed, *were* presented in the circuit court in the statutory appeal from the agency's determination. The court considered such arguments in ruling on the motion to revise the judgment and we cannot find that appellant was entitled to resort to a declaratory remedy to obtain further review of the same questions. Appellant's remedies were at an end after the ruling of the circuit court; the existence of the special statutory remedy precluded the action now before us.

### 2. *Res Judicata*

" 'The doctrine of *res judicata* is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that could have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction, proceedings were regular, and [the] omission was due to [a party's] own negligence.' " *Lease-A-Car, Inc. v. Thomassen Lincoln Mercury, Inc.,* 36 Md. App. 437, 442, 373 A. 2d 1268, 1272 (1977) [*quoting Frontier Van Lines v. Maryland Bank & Trust Co.,* 274 Md. 621, 623, 336 A. 2d 778, 780 (1975); *Alvey v. Alvey,* 225 Md. 386, 390, 171 A. 2d 92, 94 (1961)].

We have before us a case where *res judicata* applies not to the determinations of an administrative agency — a somewhat controversial area, *see Board of County Commissioners v. Racine,* 24 Md. App. 435, 332 A. 2d 306 (1975) — but, rather, to the decision of the circuit court in a statutorily-provided appeal under the Maryland Rules of Procedure. The declaratory judgment action brought by appellant was clearly barred by the doctrine.

The decision of the Court of Appeals in *Fertitta v. Brown,* 252 Md. 594, 251 A. 2d 212 (1969) is particularly instructive here. A review of the facts in some detail is necessary to show its pertinence, and points out an analogous series of procedural steps designed to obtain a measure of review beyond that permitted by Maryland law. The zoning commissioner of Baltimore County, after a hearing brought about by protesting neighbors (appellees), found that appellant, Fertitta, was illegally conducting a marina on his riverfront lot, and ordered the cessation of such activity. A further hearing determined that a non-conforming right to use the lot for a marina had been lost, and that the property could not be used for commercial purposes or as a storage place for boats belonging to appellant's personal friends.

The board of appeals then ruled that the first order was "final," and affirmed the second order. An appeal by Fertitta to the circuit court was dismissed for technical reasons. Appellant then succeeded in obtaining another hearing before the deputy zoning commissioner, who held that the property could be used for the rental of slips and sale of marina supplies. Appellees then appealed to the board of appeals, and the board authorized the continued operation of the marina. On appeal to the circuit court, Judge Proctor found that the prior decisions of the zoning authority, affirmed by the board of appeals, were binding and that new evidence presented at the later date should have been produced at the earlier hearings; a motion for rehearing and reconsideration by the court was denied. Appellant failed to perfect a subsequent appeal to the Court of Appeals, which was dismissed.

Thereupon, a bill seeking declaratory relief was filed by appellant in the circuit court, alleging that the original orders of the zoning commissioner were confusing and ambiguous, and resulted in an unconstitutional deprivation of property. Appellees demurred to the bill, under principles of *res judicata,* and Judge Menchine, then an associate judge of the circuit court, recently retired from this Court, sustained the demurrers without leave to amend.

The Court of Appeals affirmed the trial court's order, stating:

> "Whether or not the reasons relied on by Judge Proctor to deny Fertitta relief from the orders of 1962 and 1963 were sound — and we do not intimate that they were not — it is apparent that the doctrine of *res judicata* controls the case. The Circuit Court's final judgment on the merits is a binding adjudication that on the same state of fact and law Fertitta does not have a right, legal or constitutional, to operate a marina or to carry on marina-type activity. . . . *Alvey v. Alvey,* 225 Md. 386; *Woodlawn Area Citizens Assn. v. Board of County Commissioners for Prince George's County,* 241 Md. 187, 195-196; *Chatham Corp. v. Beltram,* 243 Md. 138; *Alvey v. Hedin,* 243 Md. 334; *De Maio v. Lumbermens Mutual Casualty Co.,* 247 Md. 30; *Pat Perusse Realty v. Lingo,* 249 Md. 33.

*   *   *

> "Declaratory relief was inappropriate here for reasons in addition to the impact of *res judicata.* Once a controversy has been finally adjudicated by a court with jurisdiction of the subject matter and the parties, the controversy is no longer alive and therefore is not the proper subject for a declaratory judgment action; and it is generally held that judgments and decrees speak for themselves and declaratory proceedings are not available either to construe, clarify or modify them. Declaratory proceedings were not intended to and should not serve as a substitute for appellate review or as a belated appeal. 22 Am. Jur. 2d *Declaratory Judgments* § 17; 2 Anderson, *Declaratory Judgments* (2d Ed.) § 469; Borchard, *Declaratory Judgments* (2d Ed.), pp. 350-352, 355. . . . *If declaratory relief cannot be invoked prospectively where special administrative or judicial mechanics*

> *have been legislatively or judicially established for the type of case involved, certainly it should not be allowed where the special mechanics already have been utilized to binding finality."* 252 Md. at 599-600, 251 A. 2d at 214-15. (Emphasis added.)

We find *Fertitta* strikingly apposite. Appellant had every opportunity to complain of the errors of law alleged to have been committed by the Commission in the statutorily-provided appeal to the circuit court, and, indeed, those issues were argued in the hearing on the motion to revise judgment. Judge Latham patiently listened to extensive arguments from all parties, and the record is clear, from a series of exchanges between the court and counsel, that due consideration was given to all the issues before the motion was denied. Appellant was entitled to no further review of these questions, and the declaratory judgment action should have been dismissed.

## B. *RECONSIDERATION*

A threshold question with respect to this issue is whether the Commission on Landlord-Tenant Affairs would have had jurisdiction to grant a rehearing had it ruled favorably on appellant's long-delayed Petition to Rehear. It seems elementary that a motion for rehearing would have timely effect only if filed while the administrative body retained jurisdiction over the parties and subject matter of the dispute. *Henry v. Department of Labor,* 293 A. 2d 578 (Del. Super. 1972). A logical answer to the question of when an agency loses jurisdiction is found in 73 C.J.S. *Administrative Bodies and Procedure* § 156, where it is stated:

> "Under statute, the power of an agency to reconsider a decision, order, or requirement may be limited to the time thereafter allowed for an appeal; and *without reference to statute, it has been held that the power of an administrative agency to rehear and reconsider must be exercised within a reasonable time, and before an appeal from its original order has been lodged in the courts."* (Emphasis added.)

This principle has been given effect in several jurisdictions. In *State ex rel. Borsuk v. City of Cleveland,* 277 N.E.2d 419 (Ohio 1972), the court stated the rule with reference to a prior Ohio case:

> "In *Diltz v. Crouch* (1962), 173 Ohio St. 367, 182 N.E.2d 315, an issue was presented to this court as to the authority of the Board of Liquor Control to modify an order of revocation after an appeal had been taken to court and the order affirmed. In holding that the board lacked such authority, it was reasoned that, absent specific statutory authority or rule, official boards or administrative agencies have jurisdiction to reconsider decisions only *until the actual institution of a court appeal therefrom or until expiration of the time for appeal.*" 277 N.E.2d at 421.

Similarly, the court in *Mills v. Laris Painting Co.,* 125 So. 2d 745, 748 (Fla. 1960), stated:

> "It is ... generally recognized that the power to rehear or reconsider must be exercised before an appeal from the original order of the administrative body has been lodged or before such order has become final by lapse of time without a timely appeal." *See also Southwestern Bell Telephone Co. v. State,* 71 P. 2d 747 (Okla. 1937); *Dayley v. United States,* 169 Ct. Cl. 305 (1965).

We view such a rule as eminently sound, and see no reason why it should not apply to preclude reconsideration by the agency in the instant case. The bill for declaratory relief would then have been ineffective, and dismissal would have been mandated.

Even apart from the rationale of the well-considered opinions in the above cases, we do not think the Commission had any authority to reconsider its decision, and appellant had no declaratory remedy to obtain such review. Our reasons parallel those previously given in Section A of Part II of this opinion.

### 1. *Declaratory Judgments Act*

We have already discussed, in some detail, the reasons why declaratory relief was inappropriate here. The language of Md. Cts. & Jud. Proc. Code Ann. § 3-409 (b) (1974) is equally applicable to the issue of agency reconsideration. Although the rent control article of the Montgomery County Code (1972, 1974 Cum. Supp.) makes no provision for a rehearing before the Commission, appellant argues that, under *Board of Zoning Appeals v. McKinney,* 174 Md. 551, 564, 199 A. 540, 546 (1938), a rehearing may be obtained "to correct errors in [agency] decisions caused by fraud, surprise, mistake or inadvertence. . . ." We do not quarrel with this statement in general terms. However, it has not the slightest application to the instant case, where the request for reconsideration came *after* the special statutory appeal route had been taken. Any request for reconsideration should have preceded the appeal to the circuit court, and, if denied by the agency, could have been raised in the appeal. It is our view that the special remedy afforded by the statute included any possible review of the agency's refusal to reconsider. This remedy not having been utilized, appellant was barred from seeking a declaratory judgment on the same issue. *Hartman v. Prince George's County, supra; Soley v. State Commission on Human Relations, supra.*

### 2. *Res Judicata*

The applicability of the doctrine of *res judicata* to agency action upon reconsideration of matters which have already been appealed to the courts is well-established in Maryland. A general statement of the rule is found in *Woodlawn Area Citizens Assoc. v. Board of County Commissioners,* 241 Md. 187, 195, 216 A. 2d 149, 154 (1966):

> "Whatever view may be taken of the applicability of the principles of the doctrine of res judicata to administrative or quasi-judicial determinations or actions of an agency, the text writers and the courts are in general agreement that the judgment or order of a court, including a trial court, which affirms or

reverses such determinations or actions, ordinarily is [res judicata]. 2 Davis, [*Administrative Law*] § 18.11, pp. 623-24; 2 Am. Jur. 2d *Administrative Law* § 499."

A factually apposite case is *Garrett Park v. Montgomery County Council,* 257 Md. 250, 262 A. 2d 568 (1970). There, one Willcher purchased a tract of land in Garrett Park; shortly afterwards, the entire town was rezoned from R-60 (Residential, 6000 square feet minimum) to R-90 (Residential, 9000 square feet minimum). Willcher then sought a change in classification from R-90 to R-T (Town Houses), and the town and its residents opposed his petition. Reclassification was granted by the County Council, and, in appeals to the circuit court and then to the Court of Appeals, the Council's decision was affirmed. *See Stephens v. Montgomery County Council,* 248 Md. 256, 235 A. 2d 701 (1967). Some three weeks after the Court of Appeals decision, the town filed a petition to reclassify from R-T to R-90, alleging that the prior decision of the Council had been based on an erroneous premise, *i.e.,* that the property could not reasonably have been used while zoned R-90. The hearing examiner, Rita C. Davidson, now a member of this Court, found that the petition was barred by *res judicata,* since the same facts were presented in the second action as *could* have been shown in the first. The Council adopted this rationale, similarly finding no change in circumstances sufficient to justify reclassification. Further appeals to the circuit court and Court of Appeals followed. In an opinion by Judge McWilliams, the Court of Appeals refused to accept the town's argument that *res judicata* should not apply where the initial agency decision was based on erroneous testimony and mistake. The court noted:

"No useful purpose will be served by rehashing the cases dealing with the doctrine of res judicata, especially in view of our frequent application of it in the past. Its applicability to a judgment affirming or reversing an administrative or quasi-judicial decision appears to be well settled. *See, e.g., Fertitta v.*

*Brown,* 252 Md. 594, 599 (1969), and the cases cited therein." 257 Md. at 256, 262 A. 2d at 571.

With respect to the town's "mistake" allegation, the court further stated: "[T]he argument that a legislative body has the right to correct its own mistakes might, in another context, be persuasive; here it must yield to the dispositive effect of the doctrine of *res judicata.*" *Id.* at 257-58, 262 A. 2d at 572. *See also Chatham Corp. v. Beltram,* 243 Md. 138, 152, 220 A. 2d 589, 597 (1966). ("We think it plain that the first judicial decision was *res judicata* and prevented the second action of the Commissioners. . . .")

Unlike the case of *Board of County Commissioners v. Racine, supra,* we are here concerned with the effect of *res judicata, arising from a decision of the circuit court,* on an attempt to secure reconsideration by the agency. Clearly, appellant cannot obtain another "bite at the apple" in this manner.

> *Appeal dismissed; remanded to Circuit Court with instructions to dismiss declaratory judgment action; appellants to pay the costs.*